UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| SOLORIO VERONICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:20-cv-00419-JRS-MJD |
| | ) |
| PENNY ELMORE, C.M.A, and | ) |
| DR. WILLIAM WILSON, M.D., | ) |
| | ) |
| Defendants. | ) |

**BRIEF IN SUPPORT OF DEFENDANT WILSON'S MOTION FOR
SUMMARY JUDGMENT ON FAILURE TO EXHAUST DEFENSE**

Plaintiff Solorio Veronica, an inmate confined within the Federal Bureau of Prisons ("BOP"), brings this action pursuant to *Bivens v. Six Unknown Narcotics Agents*, 403 U.S. 388 (1971), against Defendants, Penny Elmore, a certified medical assistant ("CMA"),[1] and Dr. William Wilson, the Clinical Director at the Federal Correctional Complex in Terre Haute ("FCC Terre Haute"). Veronica contends that, on September 27, 2019, when he sought medical care for abdominal pain, nausea, and dizziness, CMA Elmore refused him care and threatened him with disciplinary action if he did not return to his housing unit. [*See* Filing No. 1 at 2, 4.] He further alleges that, after he was sent to the hospital three days later, where he stayed for almost three weeks, Dr. Wilson had him returned to the prison against medical advice. [*See id.* at 4.]

Although Veronica filed remedies with the BOP regarding his allegations against CMA Elmore, those remedies do not encompass his allegations against Dr. Wilson. Nor did the remedies he submitted alert the BOP to any issue concerning Veronica's discharge from the

---

[1] Undersigned counsel does not represent Defendant Elmore, who is a BOP contractor. As such, this motion is filed on behalf of only Dr. Wilson.

hospital or give the BOP the opportunity to investigate his allegations against Dr. Wilson. As such, Veronica has failed to exhaust his mandatory administrative remedies regarding his claims against Dr. Wilson before filing this action, justifying Dr. Wilson's dismissal as a defendant.[2]

## I. STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

**A.    Veronica Solorio**

Solorio is a federal inmate who has been in BOP custody since February 25, 2000. [Filing No. 17-1 (Declaration of Renee Turner ("Turner Decl.")) at ¶ 7.] Veronica is currently housed at the United States Penitentiary in Terre Haute, Indiana ("USP Terre Haute"), where he has been incarcerated since March 9, 2009. [*Id.*; Filing No. 17-2 (Turner Decl. Attachment 1) at 1.]

**B.    BOP's Administrative Remedy System**

The BOP has promulgated an administrative remedy system that is codified at 28 C.F.R. §§ 542.10, *et seq*., and BOP Program Statement 1330.18, Administrative Remedy Program.[3] [Filing No. 17-1 (Turner Decl.) at ¶ 3.] When an inmate arrives at FCC Terre Haute, the inmate receives an orientation that includes an explanation of the BOP's administrative remedy process and instruction on how to use the institution's law library to access BOP Program Statements and FCC Terre Haute Institution Supplements. [*Id.* at ¶ 4.] Inmates who have questions or concerns about these documents (or anything else) can raise them with staff in person, submit a written "Inmate Request to Staff," or submit an electronic request. [*Id.*]

---

[2] Should the Court deny this motion, Dr. Wilson reserves the right to move for summary judgment on the merits of Veronica's claims, and any other defenses, at a later date.
[3] A full copy of BOP Program Statement 1330.18 is publicly available at http://www.bop.gov/policy/progstat/1330_018.pdf.

2

Upon an inmate's submission of an administrative remedy request, institution staff members log it into the BOP's electronic record system, the SENTRY database. [*Id.* at ¶ 5.] Administrative remedy requests filed at the institution level are referred to as BP-9s and are identified in the SENTRY database by the notation "F1" following the remedy identification number. [*Id.* at ¶ 6.] Regional Office filings are referred to as BP-10s and are identified by the notation "R1" following the remedy identification number. [*Id.*] Central Office filings are referred to as BP-11s and are identified by the notation "A1" following the remedy identification number. [*Id.*] If amended or successive filings are submitted at the same level, the numeral following the alphabetical letter will change accordingly. [*Id.*] Rejected submissions are not considered "filed" and copies are not required to be maintained by the agency unless the submission was deemed "sensitive." [*Id.*]

C.     **Veronica's Administrative Remedies**

A full report of Veronica's administrative remedy requests was run in SENTRY on March 9, 2021. [*Id.* at ¶ 9; *see* Filing No. 17-4 (Turner Decl. Attachment 3).] Between September 27, 2019, when the first of Veronica's allegations arose, and August 14, 2020, when Veronica initiated this lawsuit, Veronica submitted four administrative remedy requests, all in Remedy Case Number 999152. [Filing No. 17-1 (Turner Decl.) at ¶ 10; *see* Filing No. 17-4 (Turner Decl. Attachment 3) at 3-5.] Although Veronica later submitted three other requests for administrative remedies, in Remedy Case No. 1056462, they are all involve his request for compassionate release and do not relate to the allegations in this lawsuit. [*See* Filing No. 17-1 (Turner Decl.) at ¶ 14; Filing No. 17-4 (Turner Decl. Attachment 3) at 5-6.]

## D. Remedy Case No. 999152

On December 3, 2019, Veronica submitted Remedy No. 999152-F1 at the institution level. [Filing No. 17-1 (Turner Decl.) at ¶ 11; *see* Filing No. 17-4 (Turner Decl. Attachment 3) at 3; Filing No. 17-5 (Turner Decl. Attachment 4) at 8.] Although the remedy was initially rejected, Veronica resubmitted it, with a note from his correctional counselor explaining why it was untimely. [Filing No. 17-1 (Turner Decl.) at ¶ 11; *see* Filing No. 17-4 (Turner Decl. Attachment 3) at 3-4; Filing No. 17-5 (Turner Decl. Attachment 4) at 6-10.] The BOP accepted the remedy on December 16, 2019, as Remedy No. 999152-F2. [Filing No. 17-1 (Turner Decl.) at ¶ 11; *see* Filing No. 17-4 (Turner Decl. Attachment 3) at 4; Filing No. 17-5 (Turner Decl. Attachment 4) at 6.] In this BP-9, Veronica complains about what purportedly occurred with CMA Elmore on September 27, 2019, and alleges that he was denied medical attention on this day. [*See* Filing No. 17-5 (Turner Decl. Attachment 4) at 6.] The Warden responded on January 27, 2020, denying Veronica's request. [Filing No. 17-1 (Turner Decl.) at ¶ 11; *see* Filing No. 17-4 (Turner Decl. Attachment 3) at 4; Filing No. 17-5 (Turner Decl. Attachment 4) at 5.]

Veronica appealed the Warden's response to the Regional Office, which received his BP-10 on February 10, 2020, and assigned it Remedy No. 999152-R1. [Filing No. 17-1 (Turner Decl.) at ¶ 12; *see* Filing No. 17-4 (Turner Decl. Attachment 3) at 4; Filing No. 17-5 (Turner Decl. Attachment 4) at 4.] In his BP-10, Veronica added more factual allegations concerning what allegedly occurred with CMA Elmore on September 27th, but the appeal does not mention Dr. Wilson or the hospital discharge. [*See* Filing No. 17-5 (Turner Decl. Attachment 4) at 4.] The Regional Director responded on March 9, 2020, concurring with the manner in which the Warden addressed Veronica's concerns and denying his request. [*See* Filing No. 17-1 (Turner

Decl.) at ¶ 12; Filing No. 17-4 (Turner Decl. Attachment 3) at 4; Filing No. 17-5 (Turner Decl. Attachment 4) at 3.]

Veronica then filed his BP-11 with the Central Office on April 13, 2020, repeating his claims of deliberate indifference against CMA Elmore arising from the purported events of September 27th. [*See* Filing No. 17-1 (Turner Decl.) at ¶ 13; Filing No. 17-4 (Turner Decl. Attachment 3) at 5; Filing No. 17-5 (Turner Decl. Attachment 4) at 2.] Again, the appeal does not mention Dr. Wilson or Veronica's discharge from the hospital. [*See* Filing No. 17-5 (Turner Decl. Attachment 4) at 2.] The Administrator of National Inmate Appeals responded on May 27, 2020, concurring with the Warden and Regional Director's responses and denying Veronica's request. [*See* Filing No. 17-1 (Turner Decl.) at ¶ 13; Filing No. 17-4 (Turner Decl. Attachment 3) at 5; Filing No. 17-5 (Turner Decl. Attachment 4) at 1.]

E.   **Veronica's Complaint**

On August 14, 2020, Veronica filed his Complaint against CMA Elmore, Dr. Wilson, and Warden T.J. Watson. [Filing No. 1.] Upon screening, the Court dismissed Warden Watson as a defendant and allowed Eighth Amendment deliberate indifference claims to proceed against CMA Elmore and Dr. Wilson. [Filing No. 9 at 2-3.]

In the Complaint, Veronica contends that, on September 27, 2019, when he was experiencing abdominal pain, nausea, dizziness, and other debilitating conditions, an officer ordered him to report to the USP Terre Haute medical department. [Filing No. 1 at 2.] According to Veronica, when he reported as instructed, CMA Elmore denied him medical treatment and threatened him with disciplinary action if he did not return to his housing unit. [*Id.* at 2-3.] Three days later, on September 30, 2019, Veronica was sent to the hospital. [*Id.* at 3.] Veronica further alleges that, while he was in the hospital, where he stayed until October 16,

5

2019 [*see* Filing No. 16 at 2; Filing No. 17-5 (Turner Decl. Attachment 4) at 7, 9-10], Dr. Wilson contacted the hospital and had Veronica returned to the prison, with medical tubing inside of him, against medical advice. [Filing No. 1 at 3.]

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that summary judgment is proper if the pleadings, depositions, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). When ruling on a motion for summary judgment, the court construes all justifiable inferences in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994).

It is not, however, enough for the party opposing a properly supported motion for summary judgment to rest on mere allegations or denials of his pleadings. *See Anderson*, 477 U.S. at 256. To overcome summary judgment, the non-movant must "respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). "[T]he mere scintilla of evidence" and "[i]nferences supported only by speculation or conjecture" cannot defeat a motion for summary judgment. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018) (citations omitted).

## III. ARGUMENT

The Prison Litigation Reform ("PLRA") requires inmates to fully exhaust their administrative remedies before bringing any suit involving prison conditions. *See* 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U. S. 81, 85 (2006); *Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). This statute makes exhaustion a condition precedent to suit in federal court. *Burrell v. Powers*, 431 F.3d 282, 284 (7th Cir. 2005). In *Booth*, 532 U.S. at 739, 741, the United States Supreme Court held that full exhaustion is mandatory, leaving the court with no discretion in this area, as "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." There is no "futility exception" to the PLRA exhaustion requirement. *Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000); *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 536-37 (7th Cir. 1999).

Exhaustion should be addressed early in the litigation because the PLRA "gives prisons and their officials a valuable entitlement—the right *not* to face a decision on the merits—which courts must respect if a defendant chooses to invoke it." *Perez*, 182 F.3d at 536. Accordingly, when a defendant asserts exhaustion, "the judge must address the subject immediately" because the PLRA "can function properly only if the judge resolves disputes about [exhaustion] before turning to any other issue in the suit." *Id.*; *see also Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008) ("The alternative of trying the merits before exhaustion . . . is unsatisfactory . . . because it would thwart Congress's effort to bar trials of prisoner cases in which the prisoner has failed to exhaust his administrative remedies.").

Furthermore, "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege

7

excessive force or some other wrong." *Porter*, 534 U.S. at 532. To properly exhaust under the PLRA, an inmate must fully comply with the prison grievance procedures in effect at his place of confinement, *Jones v. Bock*, 549 U.S. 199, 199 (2007), including filing "complaints and appeals in the place, and at the time, the prison's administrative rules require," *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

The BOP has promulgated an administrative remedy system that is codified at 28 C.F.R. §§ 542.10, *et seq*., and BOP Program Statement 1330.18, Administrative Remedy Program ("P.S. 1330.18"). [Filing No. 17-1 (Turner Decl.) at ¶ 3.] The BOP administrative remedy process is a method by which an inmate may seek formal review of a complaint related to any aspect of his imprisonment. 28 C.F.R. § 542.10. To exhaust his remedies, an inmate must typically first file an informal remedy request through an appropriate institution staff member via a BP-8 prior to filing a formal administrative remedy request with the Warden, Regional Director, and General Counsel. 28 C.F.R. § 542.13; P.S. 1330.18 at 4. The BOP regulations require that an inmate submit his grievance on an appropriate form and "place a single complaint or reasonable number of closely related issues on the form." 28 C.F.R. § 542.14; P.S. 1330.18 at 5.

Typically, if the inmate is not satisfied with the response to his informal remedy (BP-8), he is required to first address his complaint with the Warden via a BP-9.[4] 28 C.F.R. § 542.14; P.S. 1330.18 at 4. Next, if the inmate is dissatisfied with the Warden's response, he may appeal to the Regional Director via a BP-10. 28 C.F.R. § 542.15; P.S. 1330.18 at 6-7. Finally, if the inmate is dissatisfied with the Regional Director's response, then the inmate may appeal to the

---

[4] There are exceptions to the requirement that the initial filing be made at the institution. *See* 28 C.F.R. § 542.14(d); P.S. 1330.18 at 6. None of these, however, are applicable here.

General Counsel via a BP-11.  28 C.F.R. § 542.15; P.S. 1330.18 at 7.  An inmate who has filed administrative remedies at all required levels and who has received a response to his appeal from the General Counsel is deemed to have exhausted his administrative remedies as to the specific issue, or issues, properly raised therein.  *See* 28 C.F.R. § 542.15 ("Appeal to the General Counsel is the final administrative appeal.").  Following exhaustion at all three administrative levels, the inmate may file a civil action in the proper United States District Court with respect to the issues properly addressed and exhausted at the administrative level.  42 U.S.C. § 1997e(a).

In the instant case, Veronica exhausted one relevant remedy case—No. 999152.  [*See* Filing No. 17-5 (Turner Decl. Attachment 4).]  But all of Veronica's submissions in that remedy case are focused on his claims against CMA Elmore and her purported actions on September 27, 2019.  For instance, in his BP-8, submitted on November 22, 2019, Veronica contends that on "Sept. 27, 2019 at 12:10 PM I was denied medical attention."  [*Id.* at 7.]  In his BP-9, Veronica identifies CMA Elmore as the one who was purportedly deliberately indifferent, alleging that on September 27, 2019, at approximately 12:20 p.m., CMA Elmore told him that "this is not an outside hospital" and gave him a "direct order" to return to his dorm immediately without letting him explain why he was seeking medical attention.  [*Id.* at 6.]  Veronica further clarifies, "This is why my initial BP-8 states Sept. 27, 2019 at 12:10 PM I was denied medical attention. Deliberate Indifference."  [*Id.*]  In his BP-10, Veronica elaborates on his claims, stating:

> On September 27, 2019 when I reported to the Medical Services Department, it infact [sic] was a Medical Emergenc [sic] Authorized by Two (2) Staff Members" namely Officer Butler, and Officer Ms. Karen who witnessed my emergency and called the corridor officer, unlocked the F-2 Dorm and authorized 'If they ask in medical, tell them we sent you.'  This response only furthers my initial claims of Deliberate Indifference and also denial of medical attention.

[*Id.* at 4.]  And, in his BP-11, Veronica reiterates his allegations that on September 27, 2019, he was denied medical attention "by medical staff in the medical department namely by CMA P.

9

Elmor [sic]" and contends that CMA Elmore's deliberate indifference caused him further harm and violated his constitutional rights. [*Id.* at 2.]

Nowhere in any of these submissions does Veronica mention Dr. Wilson, let alone his contentions that he was discharged from the hospital and ordered back to the prison against medical advice almost three weeks later. Indeed, Veronica only mentions that he was even in hospital once, in his BP-11. [*See id.* at 2 ("When I returned on the 30th due to being denied medical treatment on the 27th, I had to be rushed to the local hospital which the record speaks for itself.").]

Admittedly, Veronica is not required to name any particular defendant in his administrative remedies to exhaust his claims against that defendant. *See, e.g.*, *Jones*, 49 U.S. at 219; *Washington v. Storms*, No. 1:19-cv-03927-TWP-TAB, 2020 WL 4705182, at *3 (S.D. Ind. Aug. 13, 2020); *Muhammad v. Rupska*, Cause No. 2:15-cv-00228-JMS-MJD, 2017 WL 2734621, at *3 (S.D. Ind. June 26, 2017). At the same time, however, it is well established that a primary purpose of the PLRA's exhaustion requirement is to "reduce the quantity and improve the quality of prisoner suits" by "afford[ing] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter*, 534 U.S. 516 at 524-25; *see Jones*, 549 U.S. at 219 (identifying the benefits of exhaustion as "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record"); *Canady v. Davis*, 376 F. App'x 625, 626 (7th Cir 2010) (unpublished) ("The exhaustion requirement is strictly enforced, in part because it allows prison officials to promptly correct errors internally and to develop a factual record before a case moves to federal court."); *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005)

10

(stating that the exhaustion requirement is "designed to alert prison officials to perceived problems and to enable them to take corrective action without first incurring the hassle and expense of litigation"); *Pozo*, 286 F.3d at 1023 (noting that the exhaustion requirement "give[s] the prison administration an opportunity to fix the problem—or to reduce the damages and perhaps shed light on factual disputes that may arise in litigation even if the prison's solution does not fully satisfy the prisoner"). The prison's grievance requirements define the boundaries of proper exhaustion, *Jones*, 549 U.S. at 218, and, when it is silent, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought," *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). Accordingly, the central inquiry is whether the remedy served to alert prison officials to the problem or conditions about which the inmate was complaining, thereby providing prison officials an opportunity to investigate and address the claims before litigation. *See Jones*, 49 U.S. at 219 ("[T]he primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that may be sued."); *Wilder v. Sutton*, 310 F. App'x 10, 15 (7th Cir. 2009) (unpublished) ("[P]risoners must only put responsible persons on notice about the conditions about which they are complaining."); *Smith v. Zachary*, 255 F.3d 446, 450 (7th Cir. 2001) ("Requiring prompt notice and exhaustion also gives prison officials an opportunity to address a situation internally . . . .").

Here, Veronica's allegations that Dr. Wilson contacted the hospital and ordered him to be returned to the prison against medical advice would have arisen on or around October 16, 2019, when Veronica was discharged from the hospital. [*See* Filing No. 16 at 2; Filing No. 17-5 (Turner Decl. Attachment 4) at 7, 9-10.] But, as set forth above, Veronica's submissions in Remedy Case No. 999152 were singularly focused on CMA Elmore's purported actions on the afternoon of September 27, 2019, specifically between approximately 12:10 and 12:20 p.m., not

11

what occurred when he was discharged from the hospital nineteen days later. [*See* Filing No. 17-5 (Turner Decl. Attachment 4) at 2, 4, 6-7.] And those were the allegations that the BOP investigated and addressed in its responses. [*See id.* at 7 (in which, in response to the BP-8, the Health Services Administrator writes, "Pt reports he was denied care on 9-27-19, however I do not have any documentation verifying this information"), 5 (in which, in response to the BP-9, the Warden indicates, "A review of your request reveals on Friday, September 27, 2019, you were not on the call out for Health Services. . . . As you were not on the call out and did not make arrangements prior to coming to Health Services, you were therefore out of bounds"), 3 (in which the Regional Director concurs with the Warden's response and notes that "[a] review of your electronic medical records indicates you were evaluated on September 30, 2019, for acute abdominal pain and sent to the local emergency department. There are no entries in your record for *the date in question, September 27, 2019*. Given this, we shall defer diagnostic treatment interventions to the Health Services staff at the local level." (emphasis added)), at 1 (concurring with the manner in which the Warden and Regional Director responded to his concerns).] Notably, Veronica first initiated the administrative remedy process with the submission of his BP-8 on November 22, 2019, more than a month after he claims Dr. Wilson ordered the hospital to return him to the prison against medical advice. [*See id.* at 7.] Yet, even though the purportedly improper discharge had already occurred, Veronica does not include any allegations about his discharge or hospital stay in his remedies.

As such, Veronica's submissions in Remedy Case No. 999152 did not alert the BOP that there was any problem arising from Veronica's discharge from the hospital, or even complain about anything that occurred during his hospital stay; nor did Veronica's filings allow the BOP to investigate these allegations, thwarting the very purposes of the exhaustion requirement. *See*

*Jones*, 549 U.S. at 219; *Cannon*, 418 F.3d at 719; *Pozo*, 286 F.3d at 1023; *cf. Badley v. Granger*, No. 2:17-cv-00041-JMS-DLP, 2018 WL 3120638, at *7 (S.D. Ind. June 25, 2018) (finding that the mere mention of plaintiff's assault claim, as a part of a lengthy submission, was insufficient to put the BOP on notice that the plaintiff was specifically complaining about an officer's purported failure to protect him from the assault). Thus, having failed to alert the BOP to the nature of the purported wrongs he advances against Dr. Wilson in this case, *see Strong*, 297 F.3d at 650, Veronica did not exhaust his mandatory administrative remedies regarding his deliberate indifference claims against Dr. Wilson.

Ultimately, because Veronica failed to exhaust his deliberate indifference claim under the Eighth Amendment against Dr. Wilson, that claim is barred as a matter of law, justifying Dr. Wilson's dismissal. *See Jones*, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."); *Pozo*, 286 F.3d at 1025.

## V. CONCLUSION

For the foregoing reasons, Defendant, Dr. William Wilson, in his individual capacity, by counsel, respectfully requests that this Court grant summary judgment his favor and against Plaintiff Solorio Veronica on his failure to exhaust defense, dismiss him from this action, and grant all other just and proper relief.

                                                Respectfully submitted,

                                                JOHN E. CHILDRESS
                                                Acting United States Attorney

                        By:    *s/ Gina M. Shields*
                                                Gina M. Shields
                                                Assistant United States Attorney

# CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2021, a copy of the foregoing *Brief in Support of Defendant Wilson's Motion for Summary Judgment on Failure to Exhaust Defense*, was filed electronically. Service of this filing will be made on the following ECF-registered counsel by operation of the Court's electronic filing system:

None.

I further certify that on March 15, 2021, a copy of the foregoing *Brief in Support of Defendant Wilson's Motion for Summary Judgment on Failure to Exhaust Defense*, was mailed, by first class U.S. Mail, postage prepaid and properly addressed to the following:

Solorio Veronica
Reg. No. 16016-112
USP Terre Haute
U.S. Penitentiary
Inmate Mail/Parcels
P.O. Box 33
Terre Haute, IN 47808

        *s/ Gina M. Shields*
        Gina M. Shields
        Assistant United States Attorney

Office of the United States Attorney
Southern District of Indiana
10 West Market Street, Suite 2100
Indianapolis, IN 46204